

# SUPREME COURT OF ARKANSAS

**No.** CR–14–4

| | |
|---|---|
| ZECKEYA PERRY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** October 2, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60-CR-2012-1791]<br><br>HONORABLE HERBERT T. WRIGHT, JR., JUDGE<br><br>AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

A jury empaneled in the Pulaski County Circuit Court found appellant Zeckeya Perry guilty of capital murder and aggravated robbery. The jury sentenced Perry to a term of life in prison without parole for capital murder and thirty-five years' imprisonment for aggravated robbery. For reversal, Perry alleges that the circuit court erred (1) in denying his motion for mistrial because his lawyer was improperly placed in the position of serving as a witness; (2) in denying his motion for mistrial because the circuit court was placed in a position of judging the credibility of a witness; (3) in denying his motion for mistrial following testimony that Perry smoked marijuana; (4) in admitting statements of a co-conspirator; and (5) in denying Perry's motion for a new trial because a key witness changed his account to positively identify Perry as one of the participants in the robbery. We affirm Perry's convictions and sentences.

The record reflects that Perry's convictions stem from a robbery and murder that occurred at El Chico restaurant in Little Rock. According to the evidence presented at trial, on Sunday, April 15, 2012, two black males entered the restaurant carrying guns and wearing black hoodies, sunglasses, and bandanas covering their faces. They ordered the restaurant's customers and all employees into the restaurant's walk-in cooler, except a waiter named Jesus Herrera. While the employees and customers were inside the cooler, they heard shots being fired, and upon exiting the cooler, they found Herrera lying on the floor. He had been fatally shot.

According to the testimony, the police investigation focused on Perry after officers spoke with several employees of the restaurant. During the course of the investigation, Tyrone Barbee, the cook at El Chico, indicated that one of the robbers sounded like another restaurant employee named Kiywuan Perry, who is the brother of Perry. The police also interviewed Adrian Brooks, another restaurant employee. Brooks told the police that Kiywuan and Perry had approached him about being the get-away driver in a robbery of the restaurant. In addition, the police interviewed employee Quantez Dobbins. Dobbins advised the police that he drove Perry and Kiywuan to the area so that they could commit a robbery. Dobbins also reported that he saw the Perrys leave the car wearing hoodies and sunglasses but that he did not see them enter El Chico. He testified that the Perrys had money when they returned to the car. He further stated that Perry said that he "murked" someone, which Dobbins understood to mean that Perry had killed someone.

The police also spoke with another employee, Kenya Smith, who is Kiywuan's

girlfriend. Smith reported that earlier in the day she had heard Kiywuan talking about a plan to rob El Chico. She also stated that Kiywuan put money from the robbery in her child's diaper bag.

At trial, Barbee, Dobbins, and Smith testified. Barbee added in his testimony that he was one-hundred percent certain that Perry was one of the robbers. Dobbins testified that he and Perry smoked marijuana together and that he believed he was driving Perry and Kiywuan to rob the "marijuana man." Perry objected to this testimony as evidence of "other crimes" in violation of Arkansas Rule of Evidence 404(b) and moved for a mistrial. The circuit court denied Perry's motion and ruled that the testimony was relevant. Perry also objected to the testimony of Brooks regarding statements Kiywuan made to him about being the get-away driver. The circuit court ruled that the statements were not hearsay but were instead statements of a co-conspirator made in the course and furtherance of a conspiracy.

For his defense, Perry maintained that much of the testimony against him turned on the testimony of individuals who were accomplices. Additionally, Perry argued that he could not have participated in the robbery because he had a gash on his arm.

The jury reached its verdict after considering the testimony and evidence. Perry subsequently filed a motion for a new trial, arguing that Veronica Williams, a customer in the restaurant at the time of the robbery, was an essential witness and that the circuit court should have granted Perry a continuance to secure her presence to rebut Barbee's positive identification of Perry as one of the participants in the crimes. The circuit court denied Perry's motion, and Perry filed this appeal.

For his first point on appeal, Perry argues that the circuit court erred in denying his motion for mistrial because his attorney was placed in a position of serving as a witness. This issue arose when Perry sought to introduce the testimony of his mother, Katrina Perry. The State objected, arguing that she should be barred from testifying because she had improperly remained in the courtroom during the trial after the parties had invoked Rule 615 of the Arkansas Rules of Evidence, the witness-exclusion rule. The circuit court allowed Katrina to testify, and on cross-examination, the State questioned her about remaining in the courtroom after Perry's counsel had advised her to leave. In her testimony, Katrina indicated that she left the courtroom after Perry's counsel had asked her to leave on the first day, but that she did not understand that she was not permitted to enter the courtroom the following day. When the prosecution continued to press the issue, Perry's counsel objected and requested a mistrial, and the circuit court denied his request. Perry argues that the State's comments placed Perry in a catch–22 situation: either his mother was lying or his counsel was lying. As a result, he contends that he was entitled to a mistrial.

The decision to grant or deny a motion for mistrial is within the sound discretion of the circuit court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729. A mistrial is a drastic remedy and should only be granted when justice cannot be served by continuing the trial. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483. We find no abuse of discretion in the circuit court's refusal to grant a mistrial. First, Perry's counsel was not actually required to be a witness in his proceeding nor was Perry's counsel questioned in front of the jury regarding

4



his statements to Katrina. Moreover, the State was entitled to pursue this line of questioning with Katrina regarding her noncompliance with the witness-exclusion rule. This court has held that the violation by a witness of the rule of sequestration through no fault of, or complicity with, the party calling him, should go to the credibility rather than to the competency of the witness. *Swanigan v. State*, 316 Ark. 16, 870 S.W.2d 712 (1994). Thus, the opposing party is entitled to examine the witness about his or her noncompliance with the rule. *Id.*

Finally, the State's questions to Katrina did not indicate that the statements made by Perry's counsel and testimony of Katrina were at odds. The prosecutor stated, "There have been statements made by [Perry's counsel] to the Court that you left because he told you to leave and then you came back in." This statement is not inconsistent with Katrina's position, which was that Perry's counsel told her to leave on the first day of trial and she left, but she then returned to the courtroom on the second day of trial because she did not understand that she was still prohibited from being in the courtroom. Indeed, from the jury's perspective, both the statements made by Katrina and Perry's counsel were consistent. As a result, Perry has failed to establish that the State's inquiry into Katrina's noncompliance with the witness-exclusion rule was improper or unfairly prejudiced him in any way, and we affirm the circuit court's denial of a mistrial on this point.

As his second issue on appeal, Perry argues that the State improperly made the judge the trier of the credibility of Smith. On this point, Smith testified at trial that she had contact with the Perry brothers following the robbery. She stated that she overheard the Perry brothers discussing the robbery and that Kiywuan had placed some of the money from the



robbery in her child's diaper bag. She admitted that she had initially lied to the police about Kiywuan's involvement and about the money in the diaper bag, but she testified that she eventually told the police the truth. Because she had not been truthful at first, the State charged her with hindering apprehension and prosecution. She testified that she had pled guilty and was awaiting sentencing.

In response to questions from the prosecutor, Smith acknowledged that the judge would be responsible for sentencing her on her pending charge. The prosecutor asked, "If you lie today and the judge believes you lie, what do you think's gonna happen?" She responded, "That I will get sentenced to some time in prison." The prosecution then asked, "Okay. Are you gonna tell the truth today?" Smith responded, "Yes." Perry made a motion for a mistrial, arguing that the State had improperly put the trial judge in the position of judging Smith's credibility in front of the jury. The circuit court denied the motion but admonished the jury that they were the sole judges of the credibility of witnesses, stating

> Ladies and gentlemen, you are the sole judges of the credibility of the witness. You and you alone will determine whether or not you believe Ms. Kenya Smith. The fact that she has a sentencing hearing pending before this Court should not influence you one way or the other. You need to listen to her testimony, make your own decision as to whether you believe or disbelieve this particular witness.

On appeal, Perry contends that the State's line of questioning improperly attempted to bolster Smith's testimony by "bootstrapping it to the trial judge." In support of his claim, he cites to *Thomas v. State*, 107 Ark. 469, 156 S.W. 1165 (1913). There, the prosecutor stated in closing argument, "It has been argued here that there is no testimony on which you can convict this defendant. If there was not, his honor on the bench, always fair and safe for



defendant, would have taken this case out of your hands and directed you to find a verdict of not guilty." *Id.* at 469, 156 S.W. at 1165–66. This court held that such a statement was improper because "the failure of the court to disapprove the statement would be accepted [by the jury] as an approval and as a statement of the court's view that the evidence was of sufficient weight to sustain the verdict." *Id.*, 156 S.W. at 1166. This court examined a similar issue in the case of *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973). In that case, the trial judge asked a witness, "How much were you paid to come up with this information?" This court held that the question improperly reflected on the witness's credibility by suggesting to the jury that the witness's testimony "was of questionable value." *Id.* at 673, 501 S.W.2d at 774.

The instant case is markedly dissimilar from the cases of *Thomas* and *West*. First, unlike *West*, the trial judge in this case made no affirmative statement that could be construed as opining on the credibility of the witness. Furthermore, the judge's silence following the prosecutor's statement that the judge would sentence Smith to prison if she lied on the stand did not suggest that the trial judge had formed an opinion regarding Smith's credibility. Finally, the circuit court cured any potential prejudice by admonishing the jury regarding its sole duty to judge the credibility of the witnesses. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483 (observing that, even if a remark is improper, the circuit court may deny the mistrial motion and cure any prejudice with an admonition to the jury). We affirm the circuit court's denial of a mistrial on this point.

Perry's third point on appeal is that the circuit court should have granted a mistrial following Dobbins's statement that he and Perry smoked marijuana together. Perry argues

7



that the fact that he smoked marijuana was not independently relevant to the main issue of whether or not he robbed El Chico or relevant to prove another material point and should have been excluded under Ark. R. Evid. 404(b).

Arkansas Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith." Such evidence may be "admissible for other purposes." Ark. R. Evid. 404(b). Evidence offered under Rule 404(b) must be independently relevant, having a tendency to make the existence of any fact of consequence to the action more or less probable than it would be without the evidence. *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818. Evidence of other crimes by the accused, not charged in the indictment or information, and not a part of the same transaction, is not admissible at the trial of the accused; however, evidence of other crimes is admissible under the *res gestae* exception to establish the facts and circumstances surrounding the alleged commission of the offense. *Dixon v. State*, 2011 Ark. 450, 385 S.W.3d 164.

Under the *res gestae* exception, the State is entitled to introduce evidence showing all circumstances that explain the charged act, show a motive for acting, or illustrate the accused's state of mind if other criminal offenses are brought to light. *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006). Specifically, all of the circumstances connected with a particular crime may be shown to put the jury in possession of the entire transaction. *Id.* In this case, the evidence that Dobbins and Perry had a relationship involving the use of marijuana and that Dobbins believed the Perry brothers were going to rob the "marijuana man" was relevant to tell the entire story of the crime, and therefore it was admissible under the *res gestae*

8



exception. We find no abuse of discretion and affirm the circuit court's admission of the evidence.

Perry's fourth point on appeal is that the circuit court improperly allowed the testimony of Brooks regarding statements made by Kiywuan. Brooks testified that Perry and Kiywuan approached him about their plan to rob El Chico. Brooks further testified that Perry was present when Kiywuan brought up robbing El Chico and that they wanted Brooks to be the get-away driver. Perry objected to admissibility of this statement as hearsay, but the circuit court ruled that it was admissible and not hearsay pursuant to Arkansas Rules of Evidence 801(d)(2)(v).

Perry raises two challenges to the testimony of Brooks regarding Kiywuan's statements. First, Perry argues that the State failed to establish a prima facie case showing the existence of a conspiracy and, second, that the State failed to show that Kiywuan's statement was made during the course and in furtherance of a conspiracy.

This court has held that circuit courts are afforded wide discretion in evidentiary rulings. *Moore v. State*, 372 Ark. 579, 279 S.W.3d 69 (2008). Arkansas Rule of Evidence 801(d)(2)(v) provides that a statement is not hearsay if it is offered against a party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." *Id.* In order for the statement to be admissible as nonhearsay, the prosecution is required to make a prima facie showing that a conspiracy existed between the declarant of the statement and the defendant. *Cook v. State*, 350 Ark. 398, 864 S.W.3d 916 (2002). In this case, the State presented sufficient evidence of the conspiracy between Kiywuan and Perry. Specifically, Dobbins testified that he drove the Perry brothers to the vicinity of El



Chico on the day of the murder. He testified that they told him in the car that they were planning to commit a robbery. Dobbins further testified that they were dressed in black hoodies and wearing sunglasses. Dobbins's testimony is sufficient to meet the State's burden to establish a prima facie case of a conspiracy between Perry and Kiywuan.

Perry also argues that the evidence was insufficient to establish that he had agreed to the conspiracy because he did not actually speak to Brooks during the conversation wherein Kiywuan asked Brooks to be the driver. The fact that Perry did not vocalize the request to Brooks to be the get-away driver is of no moment because there was evidence of mutual agreement in the stated plan. Where the subsequent actions of the defendant match the previously stated plan, the evidence is sufficient to support a conclusion that the defendant agreed to the conspiracy. *Moore v. State*, 372 Ark. 579, 279 S.W.3d 69 (2008). Specifically in this case, the Perry brothers carried out the robbery and murder exactly as they described to Brooks. According to the statement Brooks made to the police, the plan was to take the customers to the back of the restaurant to the walk-in cooler. Brooks also told the police that Perry and Kiywuan stated that they wanted to shoot the victim. Because these details matched the eventual execution of the robbery and murder, the evidence is sufficient to support a conclusion that Perry agreed to the conspiracy. We hold that the circuit court did not abuse its discretion in admitting Brooks's testimony regarding Kiywuan's statements under Rule 801(d)(2)(v).

Perry's final point on appeal is that the circuit court erred in denying his motion for a new trial because he did not anticipate the testimony of Barbee positively identifying him as one of the robbers. Perry contends Barbee's testimony was prejudicial to him because he

10

had built his case on the theory that no one would be able to place him at the restaurant. Perry further contends that had he known about Barbee's testimony, he would have secured the attendance of Veronica Williams, a customer in El Chico, who stated to the police that both robbers had athletic builds. This point is not preserved for our review because Perry failed to make a timely objection at the time the State introduced Barbee's testimony. The law is well settled that to preserve an issue for appeal a defendant must object at the first opportunity. *Holt v. State*, 2011 Ark. 391, 384 S.W.3d 498. A party who does not object to the introduction of evidence at the first opportunity waives such argument on appeal. *Id*. Thus, Perry's failure to object to Barbee's testimony that Perry was one of the robbers bars this court from considering this argument on appeal.

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *Vada Berger*, Ass't Att'y Gen., for appellee.