ROBIN F. WYNNE, Associate Justice | Thomas Conan Ortega appeals his conviction for rape, for which he was sentenced as a habitual offender to life imprisonment. On appeal, he challenges the sufficiency of the evidence supporting his conviction and argues that the trial court .erred when it refused to submit the jury verdict form by interrogatories. Because appellant was sentenced to life imprisonment, this court’s jurisdiction is pursuant to Arkansas Supreme Court Rule 1—2(a)(2) (2015). We affirm. Appellant was charged as a habitual offender in the Garland County Circuit Court with rape under two alternative theories: that he engaged in sexual intercourse or deviate sexual activity with another person by forcible compulsion or that the victim was incapable of consent because she was physically helpless. At appellant’s jury trial, the victim testified that on the morning of July 4, 2014, her husband left their home in Mountain Pine to join a motorcycle club, which had been a subject of contention between the couple. That night at around 10:30, she left her cell phone with her children and her stepson in case of an ^emergency and drove to downtown Hot Springs to meet her husband. They had drinks at several. clubs, she became intoxicated, and the couple began to argue. As they were leaving on her husband’s motorcycle, she got off. She expected him to go back to get her, but he drove to his mother’s house; the victim was very upset and was crying hysterically on a curb when appellant approached her. She told appellant that she needed to get to her car, and he offered to help her; he put his arm around her, helping her walk, and they walked together for several blocks to a house on Grand Avenue. They went onto the porch, and appellant, who claimed to live there,[1] knocked on the door. While they were sitting on the porch, appellant tried to kiss her, and she told him, “I can’t kiss you.” At that point, she got up and told appellant that she needed to get home. They walked around to the side of the house, at which point appellant knocked on the door of a smaller house, and the victim saw a Rent-A-Center sign and recognized Central Avenue, where her car was parked. As she. attempted to part ways with appellant, he put her in a choke hold and she passed out. She awoke inside a dumpster, opened the lid, and saw the Rent-A-Center sign. She realized that she had blood on her hands and face and that she was sore in her genital area,[2] and she ran toward Central Avenue seeking help. She collapsed in the street, and two 911 dispatchers in separate vehicles saw her and stopped to help. They testified that they were driving home at around 6:00 a.m. after working a shift, and they -found the victim crying, |svery emotional and upset,, and covered in blood. She stated that she had been raped. She was taken by ambulance to the hospital, and medical staff there collected a rape kit. The nurse testified that the victim had a lot of dirt and debris (such as leaves) in her mouth, her genital area, and her undergarments and clothing. The emergency-room physician who treated the victim testified that she had tenderness and bruising on her neck that were consistent with choking and were not consistent with her wearing a c-collar in the ambulance and upon admission to the hospital. Expert testimony was presented that appellant’s DNA was present on the vaginal swab .from the rape kit. In addition} the jury saw photographs of the victim’s injuries. Detective Patrick Langley testified that he interviewed appellant on July 5, and appellant denied knowing, or having any involvement with, the victim. At that time, Det. Langley photographed injuries to appellant’s leg, arm, torso, and hands; the injuries appeared to be recent, and included scratches and redness. About one month later, Detective Langley interviewed appellant a second time, and he again stated that, he did .not know the victim and did not have any kind of sexual involvement with her. For his first point on appeal, appellant argues that the trial court erred in denying his motion for directed verdict; he contends that the State failed to present sufficient evidence to support a conviction for rape under either theory—by forcible compulsion or because the victim was physically helpless. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. Jeffries v. State, 2014 Ark. 239, at 3, 434 S.W.3d 889, 893. Substantial evidence is evidence forceful enough to compel a conclusion one way or the 14other beyond suspicion or conjecture. Id. This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. Id. A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann, § 5-14—103(a)(1) (Repl. 2013). A person also commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is incapable of consent because he or she is- physically helpless. Ark. Code Ann. § 5-14-103(a)(2)(A). Those terms are defined in our criminal code as follows. “Sexual intercourse” means penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(11). “Forcible compulsion” means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Id. § 5-14-101(2). “Physically helpless” means that a person is unconscious; physically unable to communicate a lack of'consent; or rendered unaware a sexual act is occurring. Id. § 5-14-101(7). Here, defense counsel made a specific motion for directed verdict at the close of the State’s case, and renewed the motion at the close of all evidence. The circuit court denied the motions. In his brief, appellant recounts the evidence favorable to his position and asks this court to make credibility determinations. He contends that, “substantial evidence supports an act of consensual sexual intercourse.” Appellant points to evidence that the victim -was angry with her husband; that she had been drinking on July 4 and into the early morning hours of July 5, 2014; that her anger continued when her husband left her “stranded”; that a witness saw her willingly walking down the street with appellant; that- she had no recollection of what had happened between allegedly being choked and waking up in a | fidumpster. Appellant argues that the redness and pain on her neck was due to the c-collar she wore, not appellant choking her, and that any -minor injuries she had were likely, from her fall on Central. Avenue. Regarding the “physically helpless” charge of rape, appellant appears to argue that the evidence was insufficient, to show that the victim was actually too intoxicated to consent to sexual intercourse. In short, appellant asks this court to disbelieve the victim’s testimony and the other, circumstantial evidence of rape and to believe the defense’s theory of the case. But this court does not make credibility determinations. See Simpson v. State, 355 Ark. 294, 300, 138 S.W.3d 671, 675 (2003) (“[I]t is the sole province of the jury to determine a witness’s credibility, as well as the weight and value of his testimony.”) Furthermore, circumstantial evidence constitutes substantial evidence when every other reasonable hypothesis-consistent with innocence is excluded. Nance v. State, 323 Ark. 583, 591-92, 918 S.W.2d 114, 117 (1996). Here, there was evidence that the victim was unconscious (and thus physically helpless) when appellant forcibly engaged in sexual- intercourse - with her against her-will. Properly viewing the evidence in the light most favorable to the State, we hold that there was substantial evidence of rape under both alternate theories of the case. Therefore, we affirm on this point. For his second point on appeal, appellant argues that the trial court should be reversed and his case remanded for a new trial because the court erred when it refused to submit the jury verdict form by interrogatories. At trial, the State initially agreed to such a verdict form; it later objected and requested a general verdict form, citing Terry v. State, 371 Ark. 50, 263 S.W.3d 528 (2007). In Terry, the defendant was charged with capital murder under | fithe felony-murder and premeditated- and-deliberated provisions of the statute; the jury rendered a general verdict of guilty, and this court affirmed the conviction. Appellant is correct that the issue of the propriéty of the general verdict form was not addressed in Terry-, however, appellant offered no authority or convincing argument to meet his burden of showing that use of the model verdict form was improper. On appeal, appellant contends that the general verdict form allowed the jury to convict him without a unanimous decision on either alternate theory of rape, and that the court committed revérsible error when it refused his proffered nonmo-del-verdict form requiring the jury to unanimously find him guilty of rape by forcible compulsion, guilty of rape because the victim was physically helpless, or not guilty. In assessing whether a circuit court should have submitted a proffered nonmo-del-verdict form to the jury, this court uses the same standard that it applies when considering whether a proffered nonmodel jury instruction is warranted. Perry v. State, 2014 Ark. 535, 453 S.W.3d 650. This court has held that nonmodel jury instructions are to be given only when the circuit court finds that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject. Id. Further, just because a proffered jury instruction may be a correct statement of the law does not mean that a circuit court must give the proffered instruction to the jury. Id. This court will hot reverse a circuit court’s decision to give or reject an instruction unless the court abused its discretion. Id. We dp not reach the merits of appellant’s argument because he cites no authority whatsoever in support of his argument and it is not apparent without further research that his argument is well taken. This court has repeatedly held that it will not consider an argument that presents no citation to authority or convincing argument. E.g., Kelly v. State, 17350 Ark. 238, 241, 85 S.W.3d 893, 895 (2002); Strong v. State, 372 Ark. 404, 419, 277 S.W.3d 159, 170 (2008) (“We will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support and it is not apparent without further research that the argument is well taken.”) Pursuant to Arkansas Supreme Court Rule 4-3(i), the record has been reviewed for all objections, motions, and requests that were -decided adversely to appellant, and no prejudicial error has been found. Affirmed. Goodson, J., concurs. Danielson and Hart, JJ., dissent. . The house was later identified as belonging to appellant's brother. . The victim further testified on cross-examination that the soreness she experienced in her genital area had never happened to her before during "normal, voluntary” sexual intercourse.